67 F.3d 503
 DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR, Petitioner,
v.
TRACE FORK COAL COMPANY; Freelan Matney, Respondents.
Consolidation Coal Company, Amicus Curiae.
 No. 93-2379.
 United States Court of Appeals,
Fourth Circuit.
 Argued July 12, 1994.
Decided Oct. 17, 1995.
 
 ARGUED: Eileen Mary McCarthy, United States Department of Labor, Washington, D.C., for Petitioner. John Headley Shott, Sr., Bluefield, West Virginia, for Respondent. William Steele Mattingly, Jackson & Kelly, Morgantown, West Virginia, for Amicus Curiae. ON BRIEF: Thomas S. Williamson, Jr., Solicitor of Labor, Donald S. Shire, Associate Solicitor, Patricia M. Nece, Counsel for Appellate Litigation, United States Department of Labor, Washington, D.C., for Petitioner. Douglas A. Smoot, Jackson & Kelly, Morgantown, West Virginia, for Amicus Curiae.
 Before RUSSELL, WIDENER, and HALL, Circuit Judges.
 Petition for review denied by published opinion. Judge Widener wrote the opinion, in which Judge Russell joined. Judge Hall wrote a separate opinion concurring in part and dissenting in part.
 OPINION
 WIDENER, Circuit Judge:
 
 
 1
 This case involves a dispute between Trace Fork Coal Company and the Director of the Office of Workers' Compensation Programs over responsibility for the payment of black lung benefits on behalf of Freelan Matney. The Director petitions for review of the Benefit Review Board's dismissal of Trace Fork Coal Company as responsible operator and the Board's refusal to remand the matter so that the OWCP could name another responsible operator. We are of opinion that the Board properly affirmed the Administrative Law Judge's dismissal of Trace Fork as responsible operator and his refusal to remand the case so that the Director might pursue other potential responsible operators. Therefore we deny the petition for review.
 
 I.
 
 2
 On November 6, 1986, Freelan Matney filed a claim for black lung benefits pursuant to the Black Lung Benefits Act, 30 U.S.C. Secs. 901-904. The district director denied benefits on April 6, 1987. Matney requested a formal hearing on his claim before an ALJ. After investigating, the district director concluded that Trace Fork was the responsible operator, and on June 5, 1987 notified Trace Fork of its potential liability for Matney's black lung benefits. On June 25, 1987 Trace Fork filed its controversion contesting both its liability as responsible operator and Matney's entitlement to benefits. On July 9, Trace Fork requested that the district director dismiss it as responsible operator, because Matney's two more recent employers both qualified as responsible operators.[1] The district director apparently never responded to this request, and later forwarded the claim to an ALJ for a hearing. On September 8, 1987 Trace Fork wrote a letter to the ALJ, requesting that the case be remanded to the district director so that Trace Fork could be dismissed as responsible operator. Matney joined in this motion for remand. The district director, in a letter dated October 7, 1987, opposed the motion, and the ALJ evidently never ruled on it.
 
 
 3
 On December 19, 1988, Trace Fork, by letter and by a response to interrogatories, clarified in detail why it felt it was not the responsible operator. Matney worked as a coal miner for Trace Fork from 1968 to 1973. After leaving Trace Fork, he worked for Vernon Coal Company and Arizona Fuel Company.[2] Vernon was Matney's most recent employer. However, the district director did not name Vernon the most recent responsible operator because Vernon's corporate charter had been dissolved and Vernon was out of business.[3] In addition, although Vernon at one point had insurance as required by 20 C.F.R. pt. 726, its insurance coverage lapsed before Matney left its employment.[4] Before working for Vernon, Matney had been employed by Arizona. The district director determined that Arizona could not be the most recent responsible operator because Arizona was out of business and had been uninsured on Matney's last day of employment, and therefore the district director sought to hold Trace Fork responsible. However, in its response to interrogatories, Trace Fork maintained that Arizona's insurance coverage had been cancelled prematurely.[5] Therefore, Trace Fork argued, Arizona's insurance should have been in effect on Matney's last day of coal mine employment, qualifying Arizona as the most recent responsible operator.
 
 
 4
 At the hearing on January 10, 1989, at which no one appeared on behalf of the Director, the ALJ heard evidence from Trace Fork and Matney. The ALJ issued a decision and order granting benefits on August 25, 1989. First, the ALJ dismissed Trace Fork as the responsible operator. The ALJ noted that Trace Fork had established, prima facie, that it was not the proper responsible operator by introducing evidence that the West Virginia CWP Fund had improperly cancelled Arizona's insurance, and that the Director failed to overcome Trace Fork's evidence. The ALJ also based its dismissal of Trace Fork as responsible operator on the general lack of evidence before him. He noted that the Director had had time to develop the responsible operator issue and had failed to do so, and that the Director should have brought other potential responsible operators into the case so that the evidence would have been more fully developed. Further, the ALJ refused to remand the case so that the Director could name another responsible operator, citing Crabtree v. Bethlehem Steel Corp., 7 Black Lung Rep. 1-354 (BRB 1984). Finally, the ALJ determined that Matney was entitled to black lung benefits. The Director appealed to the Board the ALJ's finding that the Black Lung Disability Trust Fund[6] was liable for the benefits. Trace Fork responded, urging the Board to affirm the ALJ. Matney was not a party to the appeal, and his entitlement to benefits remains undisputed.
 
 
 5
 On August 30, 1993 the Board affirmed the ALJ's decision. As a preliminary matter, the Board noted that nothing in the Act or regulations required Trace Fork to prove Arizona's or Vernon's ability to pay, and therefore the Board refused to address the propriety of the West Virginia CWP Fund's cancellation of Arizona's insurance. The Board upheld the ALJ's determination that the Director had inadequately developed the evidence so that the responsible operator could not be definitively identified, noting that evidence of Vernon's inability to pay benefits was incomplete. In addition, the Board interpreted 20 C.F.R. Sec. 725.493(a)(4) to mean that only the claimant's most recent employer, or a prior or successor operator of that employer as defined by Sec. 725.493(a)(2), could be a responsible operator. Finally, the Board refused the Director's request for remand, citing its own decision in Crabtree, 7 Black Lung Rep. 1-354.
 
 II.
 
 6
 On appeal, the Director raises four issues. First, the Director claims that the Board erred in holding that the black lung regulations prohibit the Director from assigning liability for a black lung claim to a miner's previous employer if the miner's most recent employer cannot pay benefits. Second, the Director claims the Board incorrectly held that the Director failed to establish Vernon Mining Company was unable to pay benefits. Third, the Director claims the Board improperly dismissed Trace Fork as responsible operator based on Trace Fork's claim that Arizona Fuel Company should be liable. Finally, the Director claims that this case should be remanded so that another responsible operator can be named if Trace Fork is dismissed. We are of opinion that the Board's dismissal of Trace Fork was based on substantial evidence, and also that the Board appropriately refused to remand this case for further proceedings and held the Black Lung Disability Trust Fund responsible for Matney's benefits.
 
 
 7
 We review the factfindings of the ALJ to see if they are based on substantial evidence in the record considered as a whole. 33 U.S.C. Sec. 921(b)(3), incorporated in the Black Lung Benefits Act by 30 U.S.C. Sec. 932; Zbosnik v. Badger Coal Co., 759 F.2d 1187, 1189-90 (4th Cir.1985). This court need not give substantial deference to rulings on issues of law. Bethlehem Mines Corp. v. Massey, 736 F.2d 120, 123 n. 1 (4th Cir.1984). However, because the Director administers the Act, the Director's interpretation of the Act is entitled to substantial deference. Mullins Coal Co. v. Director, OWCP, 484 U.S. 135, 159, 108 S.Ct. 427, 440, 98 L.Ed.2d 450 (1987).
 
 A.
 
 8
 The Director appeals the Board's determination that Trace Fork cannot be a responsible operator unless it qualifies as a prior operator under section 725.493(a)(2). We are of opinion that the Board's interpretation of the regulations was contrary to a decision of this court. Section 725.493(a)(4) states that:
 
 
 9
 If there is no operator which meets the conditions of paragraphs (a)(1) or (2) of this section, the responsible operator shall be considered to be the operator with which the miner had the latest periods of cumulative employment of not less than 1 year, subject to the provisions of paragraph (a)(2) of this section and provided that the conditions of Sec. 725.492(a)(2)-(a)(4) are met.
 
 
 10
 20 C.F.R. Sec. 725.493(a)(4) (emphasis added). Paragraph (a)(2) defines prior and successor operators and is designed to:
 
 
 11
 prevent a coal operator from circumventing liability ... by entering into corporate or other business transactions which make the assessment of liability against that operator a financial or legal impossibility.
 
 
 12
 20 C.F.R. Sec. 725.493(a)(2)(ii). Trace Fork argues that because (a)(4) is subject to the provisions of (a)(2), only employers who are prior or successor operators under (a)(2) can be named as responsible operators under (a)(4). The only case to address this issue, from this circuit, disposes of Trace Fork's argument. In Eastern Associated Coal Corp. v. Director, OWCP, 791 F.2d 1129 (4th Cir.1986), the court stated:
 
 
 13
 We reject [the] argument that ... an employer can qualify as a responsible operator under Sec. 725.493(a)(4) only if it also qualifies as a prior operator under Sec. 725.493(a)(2). This interpretation would render Sec. 725.493(a)(4) superfluous. The ... language [at issue] simply indicates that prior and successor operators of a previous employer may also be liable for the payment of benefits as provided by Sec. 725.493(a)(2).
 
 
 14
 791 F.2d at 1132. We are of opinion that the Board's reading of section 725.493 is erroneous because contrary to Fourth Circuit precedent, and accordingly we do not affirm on this issue. However, because the Board's decision to dismiss Trace Fork as responsible operator also adequately rests on alternate "grounds upon which the agency acted" which were addressed below, the Board's decision to hold the Black Lung Disability Trust Fund liable for Matney's benefits is affirmed. SEC v. Chenery Corp., 318 U.S. 80, 95, 63 S.Ct. 454, 462, 87 L.Ed. 626 (1943).
 
 B.
 
 15
 The Black Lung Benefits Act and its accompanying regulations do not specifically address who has the burden of proving the responsible operator issue. However, the regulations do require the Director to identify, notify and develop evidence regarding, potential responsible operators. 20 C.F.R. Secs. 725.410(b), 725.412. We agree with the Board that the ALJ's determination that the director failed to develop the evidence in this case, both regarding Vernon's ability to pay benefits under 20 C.F.R. Sec. 725.492(a)(4)(iii), and regarding Arizona's cancelled insurance, was supported by substantial evidence. The Director argues that Trace Fork has the burden of persuasion that it was not correctly named as responsible operator. Because the regulations give the Director, not Trace Fork, the power to develop evidence on this issue, the ALJ reasonably could require the Director to develop the evidence more fully than was done in this case. In this connection, we note especially that Trace Fork and the miner, together, moved for a remand to determine the responsible operator, but the Director even opposed that course, and moved for remand only at the hearing before the ALJ that was conditioned on the dismissal of Trace Fork. Accordingly, the Board's dismissal of Trace Fork was proper, and we affirm that decision.
 
 C.
 
 16
 The Director further asks that this case be remanded for the naming of another responsible operator, should we determine that Trace Fork was properly dismissed. The Board upheld the ALJ's refusal to remand, based on its holding in Crabtree, 7 Black Lung Rep. at 1-354. In Crabtree, the Board held that the Director must resolve the responsible operator issue in a preliminary proceeding, or else proceed against all potential operators at each stage of the claim adjudication, to prevent piecemeal litigation and avoid due process concerns. 7 Black Lung Rep. at 1-357. If this case were remanded and another responsible operator named, that operator would be entitled to challenge Matney's entitlement to benefits. We are unwilling to potentially upset the finding that Matney is entitled to benefits, a matter already fully litigated on the merits. The Director had full opportunity, and even a motion, to ascertain the responsible operator as a preliminary matter, but simply refused. We agree with the concerns raised by the Board in Crabtree, and find the Board's reliance on Crabtree in refusing to remand was proper. We therefore affirm that ruling.
 
 III.
 
 17
 In conclusion, we reverse the Board's interpretation of Sec. 725.493(a)(4) as contrary to a prior decision in this circuit. However, because the Board properly dismissed Trace Fork as the responsible operator due to lack of evidence and refused to remand the case for the appointment of another responsible operator, we affirm the Board's determination that the Black Lung Disability Trust Fund is liable for the payment of Matney's benefits.
 
 The petition for review is
 
 18
 DENIED.
 
 
 19
 K.K. HALL, Circuit Judge, concurring in part and dissenting in part:
 
 
 20
 I concur in all of the majority's opinion, except for Section II-B. The Director made a prima facie showing that Trace Fork was the responsible operator, i.e., that it met the criteria of 20 C.F.R. Sec. 725.492 and that none of Matney's subsequent employers did. The cold record clearly reflects that the CWP Fund terminated Arizona Fuel's coverage prior to Matney's last day of employment; I see no advantage in imposing upon the Director the additional requirement of examining the policies and procedures of individual carriers to ensure that such terminations are proper. I would instead place the substantial burden of raising and resolving that question on the party with the strongest incentive to discover the answer--the employer who wishes to avoid liability for the claim.
 
 
 21
 Trace Fork's contention that Arizona's coverage should not have been terminated is in the nature of an affirmative defense; it therefore should have borne the burden of persuasion on the issue, and, concomitantly, the risk of non-persuasion. Because the record evidence was insufficient to prove whether the CWP Fund's actions were either proper or improper, the Director's designation of Trace Fork as the responsible operator should have been allowed to stand.
 
 
 
 [1]
 The Department of Labor's black lung regulations generally impose liability for black lung benefits on the coal mine operator with which the miner was most recently employed. 20 C.F.R. Sec. 725.493(a)(1). To be the responsible operator, the employer must have employed the miner cumulatively for one year, 20 C.F.R. Sec. 725.493(a)(1), and the operator must meet the requirements of 20 C.F.R. Sec. 725.492; see infra, note 3
 
 
 [2]
 Matney also worked for three coal companies other than Vernon and Arizona after leaving Trace Fork. It is undisputed that these coal companies do not qualify as responsible operators
 
 
 [3]
 20 C.F.R. Sec. 725.492 establishes certain criteria a coal mine operator must meet to be considered a responsible operator. Subsection (a)(4) requires that a coal mine operator be able to assume its liability for the payment of continuing benefits, by either obtaining insurance, qualifying as a self-insurer, or by possessing assets that might be available for the payment of benefits. 20 C.F.R. Sec. 725.492(a)(4). Subsections (a)(1)-(a)(3), which list other criteria, are not at issue on appeal
 
 
 [4]
 Insurance coverage for black lung benefits exists only if the insurance policy is in effect on the last day of the miner's exposure to coal dust while employed by the insured. 20 C.F.R. Sec. 726.203(a)
 
 
 [5]
 The West Virginia Coal-Workers' Pneumoconiosis Fund insured Arizona for black lung benefits until the Fund cancelled the policy on March 5, 1981. Because Matney worked for, and was exposed to coal dust by, Arizona until March 6, 1981, the district director determined that the West Virginia Fund was not responsible as insurer for Matney's benefits. Trace Fork alleged that because that Fund violated its own regulations, and the Black Lung Benefits Act and regulations, by cancelling the policy without 30 days notice, see 30 U.S.C. Sec. 933(c); 20 C.F.R. Sec. 726.212, the policy should have been in effect on March 6. Thus, Trace Fork argued, Arizona qualified under 20 C.F.R. Sec. 725.492(a)(4)(i) as a responsible operator
 
 
 [6]
 The Black Lung Disability Trust Fund, created by the Black Lung Benefits Revenue Act of 1977, is responsible for paying black lung benefits in certain circumstances, including when no operator is found liable for the benefits. 26 U.S.C. Sec. 9501(d)(1)(B). We note especially that this is not the West Virginia Coal Workers Pneumoconiosis Fund which was mentioned as a sometime insurer of the operators Vernon and Arizona